**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
In re:                                                                                          NOT FOR PUBLICATION

      26 BOWERY LLC and                                       Chapter 11
      2 BOWERY HOLDING LLC,                                 Case No. 22-10412 (MG) and
                                                                                                                       22-10413 (MG)

                                  Debtors.                                   (Jointly Administered)
------------------------------------------------------------------------x
26 BOWERY LLC and
2 BOWERY HOLDING LLC,

                                  Plaintiffs,                              Adv. Pro. No. 23-01145 (MG)

v.

STEVEN NG

                                  Defendant.
------------------------------------------------------------------------x

**MEMORANDUM OPINION AND ORDER GRANTING**
**JUDGMENT OF POSSESSION AND PAYMENT OF**
**UNJUST ENRICHMENT AND CONVERTED FUNDS IN FAVOR OF PLAINTIFFS**

*A P P E A R A N C E S:*

RAVERT PLLC
*Special Litigation Counsel for Plaintiffs*
16 Madison Square West, Floor 12, #269
New York, New York 10010
By:    Gary O. Ravert, Esq.

LAW OFFICES OF ROBERT S. LEWIS, P.C.
*Attorney for Defendant Steven Ng*
53 Burd Street
Nyack, New York 10960
By:    Robert S. Lewis, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

This Opinion follows the trial held on February 5, 2024 on the adversary complaint (the "Complaint," ECF Doc. #1) of 26 Bowery LLC ("26 Bowery") and 2 Bowery Holding LLC ("2 Bowery" and, together with 26 Bowery, the "Debtors" or "Plaintiffs") that asserts 11 causes of action against defendant Steven Ng (the "Defendant"). The Defendant is a party to a three-year lease (the "Lease," PX1-19) for Apartment 4 (the "Apartment") at 2 Bowery, New York, NY 10013 (the "Property"). The Opinion constitutes the Court's findings of fact and conclusions of law.

Since the initial filing of the Complaint, the Debtors have narrowed the relief sought to the following: (i) a declaratory judgment that the Lease is void *ab initio* (Count I) or, to the extent it exists and is valid, is rescinded (Count II); (ii) an order and judgment avoiding the Lease and deeming all transfers of cash of the Debtors (the "Cash Transfers") to the Defendant as actual or constructive fraudulent conveyances (Count III); (iii) an order and judgment for conversion of the Debtors' cash in the amount of $103,035.00 on account of the Cash Transfers (Count VII); (iv) an order and judgment for unjust enrichment in the amount of $34,515.36 with respect to the Lease and unjust enrichment with respect to the Cash Transfers in an unspecified amount (Count VIII); and (v) an order and judgment for civil conspiracy in the amount of $444,572.99 to $1,808,979.09 (Count IX). (*See* Joint Pretrial Order (the "Pretrial Order), ECF Doc. # 22 at 49–50; *Plaintiffs' Memorandum of Law in Support of Complaint* (the "Supporting Memo"), ECF Doc. # 21 ¶ 23; *Plaintiffs' Statement of Withdrawal of Count VI of Complaint* ("Statement of Withdrawal"), ECF Doc. # 23; *Plaintiffs' Statement of Calculations of Amount of Converted Funds (Count VII – Steven Ng Only), Unjust Enrichment Amount (Count VIII – Steven Ng and Barbara Mak), and Damages for Civil Conspiracy (Count IX – Steven Ng Only)*

2

("Statement of Calculations"), ECF Doc. # 24 at 2–5.) With respect to Counts I, II, and III, the Debtors are also seeking an immediate judgment possession of the Apartment with a warrant of eviction or writ of assistance and immediate execution of the same. (Supporting Memo ¶ 5.)

In support of the Complaint and the relief sought, the Debtors filed (i) the Supporting Memo and (ii) the declaration of Brian Ryniker, member of financial advisory firm RK Consultants LLC and independent manager (the "Independent Manager") to the Debtors (the "Ryniker Decl.," ECF Doc. # 21-1). Numerous exhibits and the Ryniker Decl. were offered in evidence by Plaintiffs' counsel and admitted in evidence at the trial. Defendant's counsel cross-examined Mr. Ryniker. Other than the cross-examination of Mr. Ryniker, Defendant's counsel did not offer any other evidence at trial.

For the reasons discussed below, the Court **GRANTS** (i) with respect to Count I, a judgment of possession in favor of the Debtors and against the Defendant, to take immediate possession of the Apartment; (ii) with respect to Count VII, a judgment in favor of the Debtors and against the Defendant in the amount of $103,035.00; (iii) with respect to Count VIII, a judgment in favor of the Debtors and against the Defendant in the amount of $19,250.00 for unjust enrichment; and (iv) with respect to Count IX, a judgment in favor of the Defendant and against the Debtors. Finally, with respect to the affirmative defenses, the Court **GRANTS** a judgment **DISMISSING** the Defendant's affirmative defenses. For avoidance of doubt, **ALL OCCUPANTS** of the Apartment must immediately vacate the Apartment.

## I.    BACKGROUND

### A. The Debtors and the Commencement of the Chapter 11 Case

The Debtors are fee owners of the Property. (Ryniker Decl. ¶ 4.) The Property is a multi-family, mixed-use residential and commercial, 5-story building in Chinatown, Manhattan.

3

(*Id.* ¶ 12.)  The Debtors entered into two loan agreements, dated April 26, 2019, borrowing a total of $8.6 million from two lenders, which were secured and cross-collateralized by certain notes, mortgages, security agreements, membership pledge agreements, and guaranties.  (*Id.* ¶ 4.)

On March 31, 2023, the Debtors executed amended and restated operating agreements and appointed RK Consultants LLC, by its member Brian Ryniker, as Independent Manager. (*Id.* ¶ 5.)  The Independent Manager commenced the Debtors' voluntary Chapter 11 cases on March 31, 2022 (the "Petition Date"), which are being jointly administered.  (*Id.* ¶ 6.)

### B. The Lease Agreement

The Defendant, along with his brother Wilson Ng, are co-members and managers of the Debtors.  (*See* Supporting Memo at 1.)  The Defendant concedes that the Lease, which provides for a monthly rent of $550.00, established rent that is substantially less than market rate and the amount recited on the certified rent roll for the Property (the "2 Bowery Certified Rent Roll"). (PX1A ¶¶ 140, 142, 145–46.)

The Defendant indicates that he and Wilson Ng signed the Lease, but the terms of the Lease were never enforced.  (PX1A ¶¶ 144, 151.)  The Defendant admitted that he did not pay rent, the security deposit, or register utilities in his name as required under the Lease.  (*Id.* ¶¶ 153–55.)  In fact, he conceded that "there is no documentary evidence that [he] ever paid rent under the [Lease]" or the security deposit.  (*Id.* ¶¶ 156–57.)  Notwithstanding the foregoing, neither he nor Wilson Ng ever enforced the Lease.  (*Id.* ¶ 151 (admitting that "neither Wilson Ng nor Steven Ng enforced the terms of the Steven Ng Lease").)

### C. The Cash Transfers

The Debtors indicate that the Defendant was in receipt of "numerous Cash Transfers" that the Defendant failed to turn over to the Debtors.  (Supporting Memo ¶ 40.)  The Debtors'

papers are nonetheless unclear as to what transactions constitute the Cash Transfers or its total amount.  (*See, e.g.*, *id.* ("Without an accounting, the Debtors cannot be sure they have identified all of such Cash Transfers . . . ."); *id.* (asserting that the Defendant admitted to receiving and depositing personal account checks for "thousands of dollars"); *id.* (alleging that there were "numerous Cash Transfers from Debtor bank accounts . . . to the personal bank accounts of [the Defendant] and Wilson Ng"); *id.* ¶ 51 ("The Debtors' evidence demonstrates that [the Defendant] is liable to the Debtors for conversion of unknown sums of cash belonging to the Debtors.").)

At the close of trial, however, the Debtors filed the Statement of Calculations, which indicates that with respect to their claim for conversion on account of the Cash Transfers, the Defendant was in receipt of $103,035.00 of the Debtors' funds.  (Statement of Calculations at 2.)  Specifically, Exhibit A to the Statement of Calculations identifies the individual transactions comprising the Cash Transfers, including where each transaction is reflected in the evidence admitted in this case.  The Cash Transfers, which span May 3, 2019 through April 5, 2022, consist of transactions to the Defendant from (i) a Debtor bank account or (ii) the Chouk King Co. Chase bank account—the account of the former owner of 2 Bowery that the Defendant and Wilson Ng admittedly still use.  (*Id.* at 3; PX1A ¶¶ 301–303 (Defendant admitting the continued use of the Chouk King Co. bank account).)  Funds transferred from the Chouk King Co. Chase bank account allegedly relate to T-Mobile rents.  (*Id.* at 3.)  Accordingly, for purposes of this Opinion, the transactions identified on Exhibit A to the Statement of Calculations in the total amount of $103,035.00 shall constitute the Cash Transfers that are subject to this Court's ruling.

The Defendant has conceded that he received certain of the Cash Transfers: (i) Wilson Ng's transfer of $38,000.00 to the Defendant from 2 Bowery's bank account (*see* PX1A ¶ 284

5

(admitting that "on May 3, 2019, Wilson Ng wrote a check to [the Defendant] in the amount of $38,000 from [2 Bowery's] Bank of America[1] account . . . which was deposited into [the Defendant's] personal account"); (ii) the Defendant's receipt and deposit of "personal account checks for 'thousands of dollars' from the [2 Bowery] bank account" (Supporting Memo ¶ 40; *see* PX1A ¶ 287 (admitting that Wilson Ng wrote "additional checks for thousands of dollars from [2 Bowery's] Bank of America account . . . to [the Defendant] which [the Defendant deposited in his personal bank"); and (iii) the Defendant's possession of at least $25,000 in cash rent from T-Mobile (*see* PX7 at 108:5–21 (conceding that he was holding "over $25,000" in cash rent from T-Mobile)).

### D. The Adversary Proceeding

On July 21, 2023, the Debtors filed the Complaint, commencing this adversary proceeding. As discussed, the Plaintiffs are seeking (i) an immediate judgment possession of the Apartment with a warrant of eviction or writ of assistance and immediate execution of the same with respect to Counts I, II, and III; (ii) an order and judgment avoiding the Lease as an actual or constructive fraudulent conveyance and deeming the Cash Transfers to be the same (Count III); (iii) an order and judgment for conversion of the Debtors' cash in the amount of $103,035.00 on account of the Cash Transfers (Count VII); (iv) an order and judgment for unjust enrichment in the amount of $34,515.36 with respect to the Lease and unjust enrichment with respect to the Cash Transfers in an unspecified amount (Count VIII); and (v) an order and judgment for civil conspiracy in the amount of $444,572.99 to $1,808,979.09 (Count IX).

---

[1] The Statement of Calculations indicates that, which respect to the $38,000.00 transfer made on May 3, 2019, 2 Bowery's bank account is with TD Bank and not Bank of America. (*See also* Ryniker Decl. ¶ 351 ("On May 3, 2019 . . . at least $38,000 . . . in the possession of [2 Bowery] at its TD Bank account ending 1828 was deposited into the personal bank account . . . of Steven Ng.").) As the Statement of Calculations provides a detailed accounting of the transactions, including relevant account numbers, the Court will adopt the information set forth in the Statement of Calculations concerning 2 Bowery's bank account.

6

On October 13, 2023, the Defendant filed the Answer, opposing the relief sought and asserting 11 affirmative defenses in response to all claims asserted. The relevant affirmative defenses are as follows: (i) failure to state a cause of action as to all counts; (ii) barred by doctrine of laches as to all counts; (iii) to the extent the Lease was previously terminated through an action for eviction or ejectment, dismissal for lack of any justiciable controversy as to Counts I and II; (iv) to the extent any recovery for any voided transfer was previously made pursuant to 11 U.S.C. § 544, the Debtors are entitled only to a single satisfaction of debt as to Count III; (v) time-barred by the applicable statute of limitations as to Count III; and (vi) inapplicability of the alleged governing statutes since the Defendant is "not a debtor of the Plaintiff[s]" as to Count III. (Answer ¶¶ 4–26.) No affirmative defenses were raised as to Counts VII, VIII, and IX.

On January 31, 2024, the Court entered the Pretrial Order, which, among other things, amended the pleadings to "embrace" only the contentions of the parties set forth therein. (Pretrial Order at 3.) As reflected in the Pretrial Order, the Defendant did not submit any contentions, issues to be tried, or evidentiary support in opposition to the relief sought. (*See id.* §§ IV(B), V(2), VII, X.)

On February 5, 2024, the Court held an in-courtroom trial during which the Plaintiffs indicated that they would be seeking relief with respect to Counts I, II, III, VII, VIII, and IX. At trial, Plaintiffs offered exhibits PX1 through PX17, PX1-1 through PX1-39, and PX6A into evidence. The Defendants did not object and all exhibits were admitted into evidence.

## II.    LEGAL STANDARD

### A. Requirements for an Enforceable Valid Contract

Generally, the interpretation of leases is subject to the "same rules of construction [that] . . . are applicable to contracts generally." *Himmelberger v. 40-50 Brighton First Road*

*Apartments Corp.*, 943 N.Y.S.2d 118, 120 (N.Y. App. Div. 2012). For a contract to be valid, there must be an offer, acceptance, consideration, mutual assent, and an intent to be bound. *Kolchins v. Evolution Markets, Inc.*, 128 A.D.3d 47, 59, 8 N.Y.S.3d 1 (N.Y. App. Div. 2015). Where objective evidence demonstrates that the parties intended to be bound by an agreement, that agreement may be enforced—even if it is unsigned. *See Flores v. Lower East Side Serv. Ctr., Inc.*, 4 N.Y.3d 363, 369 (N.Y. 2005). It is the "party seeking to enforce the contract [that] bears the burden at trial to establish that a binding agreement was made and to prove its terms." *Kramer v. Greene*, 36 N.Y.S.3d 448, 450 (N.Y. App. Div. 2016). The absence of any of these essential elements of a contract is a bar to its enforceability. 22 N.Y. Jur. 2d, Contracts § 9; *see Kensington Court Assocs. v. Gullo*, 579 N.Y.S.2d 485 (N.Y. App. Div. 1992) ("If an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract.") (citation omitted).)

As a threshold matter, for a contract to be binding, "there must be a manifestation of mutual asset sufficient definite to assure that the parties are truly in agreement with respect to all material terms." *Matter of Express Indus. & Term. Corp. v. New York State Dept. of Transp.*, 93 N.Y.2d 584, 589 (N.Y. 1999). "Such manifestations may be expressed through a party's written or spoken words, silence, or conduct, so long as the party 'intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents.'" *Wu v. Uber Tech., Inc.*, 186 N.Y.S.3d 500, 586 (N.Y. App. Div. 2022) (quoting the Restatement (Second) of Contracts § 19 [1]-[2]).

A contract must also be supported by consideration—each party must receive "something of value." *Apfel v. Prudential-Bache Secs. Inc.,* 616 N.E.2d 1095, 1097 (N.Y. 1993). To satisfy this requirement, it is sufficient that if something of "real value in the eye of the law was

8

exchanged." *Id.* (internal quotations and citations omitted).  Generally, "[m]utual promises or obligations of parties to a contract, either express or necessarily implied, may furnish the requisite consideration."  *Oscar Schlegel Mfg. Co. v. Peter Cooper's Glue Factory*, 231 N.Y. 459, 461 (N.Y. 1921); *see also NCSPlus Inc. v. WBR Mgmt. Corp.*, 949 N.Y.S.2d 317, 325 (N.Y. App. Div. 2012).

Lastly, the parties must intend to be bound.  *See Four Seasons Hotels Ltd. v. Vinnik*, 515 N.Y.S.2d 1, 5 (N.Y. App. Div. 1987) ("There can be no contract absent a mutual intent to be bound.").  In determining whether such intent exists is a "mixed question of law and fact."  *Id.*  This means that "the question is to be decided by the court if determinable from the language employed in the written instrument, and if not so determinable—if resort must be had to disputed evidence or inferences outside the written words of the instrument—then by the finder of the facts."  *Id.* (citation omitted).  Generally, an "objective test is . . . to be applied."  *Id.* at 6.  "This means the manifestation of a party's intention rather than the actual or real intention is ordinarily controlling, for a contract is an obligation attached, by the mere force of law, to certain acts of the parties, usually words, which ordinarily accompany and represent a known intent."  *Id.* (quoting 21 N.Y. Jur. 2d Contracts § 29).  Accordingly, a court should "not put disproportionate emphasis on any single act, phrase or other expression but, instead, on the totality of these, given the attendant circumstances, the situation of the parties, and the objectives they were striving to attain."  *Id.* (citing *Brown Bros. Elec. Contractors, Inc. v. Beam Constr. Corp.*, 41 N.Y.2d 397, 399–400 (N.Y. 1977)).

### B. Unjust Enrichment

To prevail on a claim of unjust enrichment under New York law, "a plaintiff must establish that the defendant benefitted at the plaintiff's expense and that equity and good

conscience require restitution." *Whitman Realty Grp., Inc. v. Galano*, 838 N.Y.S.2d 585, 587 (N.Y. App. Div. 2007) (citation omitted). In other words, "[t]o state a cause of action for unjust enrichment, a plaintiff must allege that it conferred a benefit upon the defendant, and that the defendant will obtain such benefit without adequately compensating plaintiff therefor." *Smith v. Chase Manhattan Bank, USA, N.A.*, 741 N.Y.S.2d 100, 102 (N.Y. App. Div. 2002) (quoting *Nakamura v. Fujii*, 253 A.D.2d 387, 390 (N.Y. App. Div. 1998)). Generally, recovery for unjust enrichment is "barred by a valid and enforceable contract." *Whitman*, 838 N.Y.S.2d at 588.

### C. Conversion Under New York Law

Under New York law, conversion occurs "when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Petrone v. Davidoff Hutcher & Citron, LLP*, 54 N.Y.S.3d 25, 27 (N.Y. App. Div. 2017) (quoting *C&B Enters. USA, LLC v. Koegel*, 136 A.D.3d 957, 958, 26 N.Y.S.3d 185 (N.Y. App. Div. 2016)); *see also Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 452 N.Y.S.2d 599, 600 (N.Y. App. Div. 1982) ("Conversion is an unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights."). The "[t]wo key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's right." *Colavito v. New York Organ Donor Network, Inc.*, 827 N.Y.S.2d 96, 100 (N.Y. 2006) (citations omitted).

"Money, if specifically identifiable, may be the subject of a conversion action." *Peters Griffin*, 452 N.Y.S.2d at 600; *see also Republic of Haiti v. Duvalier*, 626 N.Y.S.2d 472, 475 (N.Y. App. Div. 1995) ("Where the property is money, it must be specifically identifiable and be subject to an obligation to be returned or to be otherwise treated in a particular manner.")

10

(citation omitted). *See, e.g.*, *Simpson & Simpson, PLLC v. Lippes Mathias Wexler Friedman LLP*, 14 N.Y.S.3d 258, 260 (N.Y. App. Div. 2015) (concluding that the embezzled funds were sufficiently identifiable and traceable to sustain a cause of action for conversion). Generally, funds of a specific named bank account are considered sufficiently identifiable. *Republic of Haiti*, 626 N.Y.S. 2d at 475. This element for an action involving the conversion of money "seeks not to ensure that a specific description of each bill is proved but that the amount converted is ascertained." *Family Health Mgmt., LLC v. Rohan Devs., LLC*, 171 N.Y.S.3d 44, 51 (N.Y. App. Div. 2022) (internal quotation marks and citation omitted).

### D.  Civil Conspiracy

Generally, while New York does not recognize an independent cause of action for civil conspiracy, "a plaintiff may plead the existence of a conspiracy in order to connect the actions of the individual defendants with an actionable, underlying tort and establish that those actions were part of a common scheme." *Litras v. Litras*, 681 N.Y.S.2d 545, 546 (N.Y. App. Div. 1998) (citations omitted). A bare conclusory allegation of conspiracy is insufficient. *Blanco v. Polanco*, 986 N.Y.S.2d 151, 155–56 (N.Y. App. Div. 2014) (citation omitted).

To establish a claim of civil conspiracy, "a plaintiff must demonstrate the primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *Norex Petroleum Ltd. v. Blavatnik*, No. 650591/11, 2015 WL 5057693, at *12 (N.Y. Sup. Ct. Aug. 25, 2015) (quoting *Abacus Fed. Sav. Bank v. Lim*, 75 A.D.3d 472, 474, 905 N.Y.S.2d 585 (N.Y. App. Div. 2010)). An allegation of conspiracy "carries no greater burden, but also no less, than to assert adequately common action for a common purpose by common agreement or understanding among a group, from which

11

common responsibility derives." *Faulkner v. City of Yonkers*, 105 A.D.3d 899, 900, 963 N.Y.S.2d 340 (N.Y. App. Div. 2013) (citations omitted).

### III.    DISCUSSION

**A. The Lease**

1. The Lease is Void

A consideration of the totality of the evidence supports the conclusion that the Lease is unenforceable given the parties' lack of intent to be bound. *See Brown Bros.*, 41 N.Y.2d at 399–400 (stating that the existence of a binding contract is "not dependent on . . . subjective intent" but rather "totality" of the parties' "objective manifestations . . . as gathered by their expressed words and deeds"); *Flores*, 4 N.Y.3d at 495–96 (considering whether it is "evident from the totality of circumstances that the parties intended to be bound"). Here, there is no dispute that the Defendant and Wilson Ng "mutually assented to the Lease." (*See* Supporting Memo ¶ 14 ("The Debtors do not dispute that signatories Steven Ng and Wilson Ng mutually assented to the purported lease.").) However, the evidence overwhelmingly supports that, notwithstanding their entry into the Lease, the parties lacked any intent to be bound. The Defendant admitted that he did not pay rent or the security deposit and did not register utilities under his name as otherwise required under the Lease. (PX1A ¶¶ 153–55; *see also id.* ¶¶ 156–57 (admitting also that there is no documentary evidence that the Defendant ever paid rent or the security deposit).) Despite the Defendant's nonpayment and otherwise compliance with the terms of the Lease, neither Wilson Ng nor Steven Ng ever enforced the terms of the Lease. (*Id.* ¶ 224 (admitting that the Lease was never enforced).) Therefore, the totality of the evidence reflects that the parties lacked intent to be bound.

Even if the parties did intend to be bound by the terms of the Lease, their conduct suggests that the Lease was abandoned. "To establish abandonment of a contract by conduct, it

12

must be shown that the conduct is mutual, positive, unequivocal, and inconsistent with the intent to be bound." *Rosiny v. Schmidt*, 185 A.D.2d 727, 732, 587 N.Y.S.2d 929 (N.Y. App. Div. 1992). None of the parties to the Lease admittedly complied with or sought to enforce the terms of the Lease, indicating both mutuality and conduct that were inconsistent with an intent to be bound.

While the Defendant denies that the parties did not intend the Lease to be binding on its terms, the Defendant has offered no contentions, issues to be tried, witnesses, or exhibits in support of its denial or its opposition generally. (*See* PX1A ¶ 158 (denying as to the Defendant that "[n]either Wilson Ng nor Steven Ng intended for the . . . Lease to be binding according to its terms"); Pretrial Order IV(B), V(2), VII, X (reflecting that the Defendant did not offer anything in support of its opposition).) Given that the Lease is unenforceable, the Court **GRANTS** judgment for the Debtors on Count I, which seeks declaratory judgment that the Lease is void *ab initio*, as well as an immediate judgment of possession of the Apartment with a warrant of eviction or writ of assistance granting immediate possession.

In light of the foregoing, the Court does not need to reach Count II (Recission of Lease) or Count III (Actual or Constructive Fraudulent Conveyance) as it relates to the Lease since both counts are predicated on the existence of a valid and enforceable lease. (*See e.g.,* Supporting Memo ¶ 23 (indicating that Count II seeks recission of the Lease to the extent it exists and is valid).)

2. <u>Defendants were Unjustly Enriched</u>

As the Lease is deemed void and the Defendant has otherwise enjoyed the benefits of the Property without admittedly paying any rent, the Plaintiffs are entitled to judgment for unjust enrichment in the amount of $19,250.00. This figure represents the total amount of unpaid rent

13

over the period of the Lease from May 1, 2021 through March 31, 2024[2] that has lapsed thus far at a monthly rent of $550.00 as set forth therein. The Plaintiffs seek payment of $34,515.36, using the $958.76 per month rent figure for the Apartment set forth in the 2 Bowery Certified Rent Roll. (*See* Statement of Calculations at 4.) However, given that the Defendant had executed the Lease for the monthly rent of $550.00, the Court adopts this figure for purposes of computing unjust enrichment. Accordingly, the Court **GRANTS** judgment in favor of the Debtors on Count VIII as it relates to the Lease in the amount of $19,250.00.

### B. Cash Transfers

The Defendant is liable for conversion of the Cash Transfers in the amount of $103,035.00 as set forth in the Statement of Calculations. Under New York law, conversion is established where (i) a plaintiff maintains a possessory right or interest in the property and (ii) the defendant's dominion over the property or interference with it is "in derogation of plaintiff's right." *Colavito*, 827 N.Y.S.2d at 100. Each of these elements are satisfied here.

*First,* the Cash Transfers are comprised of funds either transferred from the Debtors' accounts or from the Chouk King Co. account to the Defendant. The Defendant has conceded that funds from the latter are comprised of T-Mobile rents, which the Debtors are entitled to. Specifically, four transactions in the total amount of $43,270.00 were transferred to the Defendant directly from the Debtors' accounts. (*See* Statement of Calculations, Ex. 1 (reflecting $42,420.00 in total transferred from 2 Bowery's TD Bank account and $850.00 in total transferred from 26 Bowery's Bank of America account).) Meanwhile, the remaining transactions involve a series of transfers from the Chouk King Co. Chase account in the total

---

[2] The Lease specifies "4/31/2024" as the termination date of the Lease, which the Court believes should be April 30, 2024. As April 2024 has not yet commenced, the April rent is not included in the unjust enrichment award.

amount of $59,765.00, which the Defendant has admitted includes rent from T-Mobile. (*See, e.g.*, PX-7 at 108:18–109:17 (confirming that the Debtor is holding $25,000 of T-Mobile rents).) Such funds belong to the Debtors.

Notably, the Statement of Calculations, which identifies each individual Cash Transfer, makes clear that the funds are specifically identifiable and traceable for purposes of determining liability for conversion. *See Republic of Haiti*, 626 N.Y.S. 2d at 475 (indicating the funds at a specifically named bank account may be deemed "sufficiently identifiable"); *Family Health*, 171 N.Y.S.3d at 51 (concluding that because the parties did not dispute that the plaintiffs sent $96,000.00 to the defendant, which the defendant retained, the money was "identified so far as was needful").

The Defendant has not offered anything to suggest that the Cash Transfers are not property of the Debtors. (*See* Pretrial Order IV(B), V(2), VII, X (reflecting that the Defendant did not offer anything, including evidence, in opposition).) The Court has no reason to find otherwise. Accordingly, the Debtors maintain a possessory interest in the Cash Transfers and the first element of conversion is satisfied.

*Second*, it is undisputed that the Defendant has not returned the funds comprising the Cash Transfers to the Debtors, in which the Debtors maintain a possessory interest. With respect to the T-Mobile rents in particular, the Defendant has conceded that such funds remain in his possession. (*See e.g.,* PX7 at 105:15–22 (confirming that a transfer of funds from the Chouk King Co. account was T-Mobile rental money that was transferred to the Defendant and remains in his possession); *id.* at 107:13–23 (conceding that he took the T-Mobile rental money "out in cash"); *id.* 108:18–109:17 (confirming that he is possession of a total of $25,000 of funds comprising T-Mobile rents that the Debtors are entitled to).)

15

Additionally, the Debtors have requested that such funds be returned, which the Defendant has not yet done. (*See id.* at 108:22–109:3 ("At this point I am requesting an accounting of the TMobile [sic] money and the turnover of all the money that was from the rent from TMobile to the debtors that is sitting in Mr. Ng's account."); *id.* at 109:14–17 ("I was requesting all of the money which is the [D]ebtors' money, whether it's before or after the petition").) Where "possession of the property is originally lawful, a conversion occurs when the defendant refuses to return the property after a demand." *Core Dev. Group LLC v. Spaho*, 157 N.Y.S.3d 416, 419 (N.Y. App. Div. 2021) (quoting *Matter of White v. City of Mount Vernon*, 221 A.D.2d 345, 346, 633 N.Y.S.2d 369 (N.Y. App. Div. 1995)). On the whole, "conversion is concerned with the superior right of possession of such property, not title ownership." *Core Dev.*, 157 N.Y.S.3d at 419. Therefore, as the Defendant's possession of the Cash Transfers has interfered with the Debtors' possessory rights, the second element of conversion is also satisfied.

Accordingly, the Court **GRANTS** judgment in favor of the Debtors on Count VII, **DIRECTING** that the Cash Transfers in the total amount of $103,035.00 be returned to the Debtors. In light of the foregoing, the Court need not reach Count III (Actual or Constructive Fraudulent Conveyance), or Count VIII (Unjust Enrichment) as they relate to the Cash Transfers.

### C. Civil Conspiracy

The Debtors also assert that the Defendant is liable for civil conspiracy in the amount of $444,572.99 to $1,808,979.09, which is predicated on the 10 leases he and Wilson Ng executed to family members. (*See* Supporting Memo ¶ 57; Statement of Calculations at 4 and Ex. 2.) However, to prevail on a claim for civil conspiracy, a party must first demonstrate that an agreement between two or more parties exist. *See Norex Petroleum*, 2015 WL 5057693, at *12. The Debtors have failed to establish this threshold element.

In support of their contention that the Defendant engaged in civil conspiracy, the Debtors rely solely on circumstantial evidence that they believe reflects a "common agreement or understanding between [the Defendant] and Wilson Ng." (Supporting Memo ¶ 59.) Specifically, the Debtors indicate that there "there was a common design or objective, namely the continued use and occupancy of nearly all of the [Debtors'] valuable leaseholds by insiders for no consideration . . . to the detriment of the [Debtors]." (*Id.*) Indeed, the Debtors acknowledged at the hearing before this Court on February 5, 2024 that they did not have proof of conspiracy, but that the circumstantial evidence was "overwhelming." Circumstantial evidence, however, is not enough. *See, e.g.*, *Faulkner*, 105 A.D.3d at 901 (holding that civil conspiracy did not exist because even if it were factually true that the appellant advised her former husband to falsely tell the police that the plaintiff had hit him, "the plaintiff failed to submit any evidence to demonstrate that the appellant and her former husband *entered into an agreement* to make a false [police] report.") (emphasis added). The Debtors have cited to no case law indicating otherwise. Accordingly, the Court orders that judgment be entered in favor of Defendant and against the Debtors on Count IX.

### D. Dismissal of the Affirmative Defenses is Warranted

Dismissal of the Defendant's affirmative defenses is also warranted. Generally, a defendant asserting an affirmative defense bears the burden of proof with respect to that defense. *Barton Grp., Inc. v. NCR Corp.*, 796 F. Supp.2d 473, 498 (S.D.N.Y. 2011); *see Leopold v. Baccarat, Inc.*, 239 F.3d 243, 245 (2d Cir. 2001) ("It is well-established that a defendant . . . bears the burden of proving its affirmative defense."); *Nat'l Commc'ns Ass'n Inc. v. AT&T Corp.*, 238 F.3d 124, 131 (2d Cir. 2001) ("The general rule is that the party that asserts the affirmative of an issue has the burden of proving the facts essential to its claim.") (quoting

17

*Auburndale State Bank v. Dairy Farm Leasing Corp.*, 890 F.2d 888, 893 (7th Cir. 1989)). Here, the Defendant has not offered any argument, facts, or evidence in support of the relevant affirmative defenses asserted. (*See* Pretrial Order §§ IV(B), V(2), VII, X (submitting no contentions, issues to be tried, exhibits, or witnesses for the Court's consideration).) Therefore, the Defendant has not carried his burden with respect to any of the affirmative defenses. Judgment must be entered in favor of the Debtors and against the Defendant **DISMISSING** the affirmative defenses.

## IV.  CONCLUSION

For the reasons stated, the Court orders that on or before 5:00 pm, March 13, 2024, counsel for Debtors shall prepare a proposed Judgment consistent with this Opinion.

**IT IS SO ORDERED.**

Dated:    March 6, 2024
         New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge